## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE CADLE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS U.S.A., INC., ROBERT GREENBERG and DAVID WEINBERG,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Monique Cadle ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Skechers U.S.A., Inc. ("Skechers" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Skechers common stock

between April 23, 2015 and October 22, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Skechers designs, develops, and markets footwear for men, women, and children. The Company's primary reporting segments are: (1) Domestic Wholesale; (2) International Wholesale; and (3) Retail (which includes both domestic and international Company stores). From 2013 through 2015, Domestic Wholesale was the Company's primary driver of growth and accounted for higher net sales as compared to the other two segments. The Domestic Wholesale segment accounted for approximately 39 percent of Skechers' 2015 total net sales. The Company's Domestic Wholesale customers include department stores, athletic footwear retailers, and specialty shoe stores.  During the Class Period, Skechers repeatedly touted the strength of customer demand within the Domestic Wholesale segment, which the Company claimed would spur continued sales growth. Skechers frequently emphasized that its Domestic Wholesale segment growth would continue into the second half of 2015 based on pending orders and meetings with key customers.

3.      Founded in 1992, the Company is headquartered in Manhattan Beach, California and its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "SKX."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the

Company's Domestic Wholesale customers took early receipt of fall 2015 inventory, causing them to delay receipt of and, in some cases, cancel pending orders scheduled for delivery in the second half of 2015; (ii) as a result of the foregoing, the Company's Domestic Wholesale growth rate was unsustainable; and (iii) as a result of the foregoing, Skechers' public statements were materially false and misleading at all relevant times.

5.     The Company's slowing sales growth was revealed on October 22, 2015 after the market closed, when Skechers issued a press release announcing financial results for the third quarter ended September 30, 2015, which included disappointing net sales that fell short of analysts' consensus estimates. According to Defendants, $20 million in net sales were shifted from third quarter 2015 into second quarter 2015 due to early customer deliveries. Defendants blamed the sales miss on the Company's inability to make up this shortfall in third quarter 2015 due to a weaker-than-expected retail environment.

6.     On news of the Company's disappointing net sales and diluted earnings per share, Skechers common stock fell $14.55 per share, or 31.50 percent, to close on October 23, 2015 at $31.64 per share.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and/or dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Skechers transacts business in this District, and the Company's stock trades in this District on the NYSE.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Skechers securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Skechers is incorporated in Delaware with its principal executive offices located at 228 Manhattan Beach Boulevard, Manhattan Beach, California, 90266. Skechers' shares trade on the NYSE under the ticker symbol "SKX."

14.     Defendant Robert Greenberg ("Greenberg") served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

15.     Defendant David Weinberg ("Weinberg") served at all relevant times as the Company's Chief Financial Officer ("CFO") and Director.

4

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Skechers' reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material nonpublic information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.     Skechers and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Skechers designs, develops, and markets footwear for men, women, and children. Following a period of stagnation and volatility from 1999 through 2012, Skechers enjoyed rapid growth from 2013 through 2014. During this period, revenue streams grew as Skechers opened new retail outlets, entered into distribution deals with department, athletic, and specialty stores and online retailers, and utilized a celebrity-driven marketing campaign.

19.     In June 2014, a dispute erupted between a union representing dockworkers (the "Dockworkers") and a maritime association representing shipowners (the "Shipowners") upon expiration of a labor contract, leading to crippling port delays all along the West Coast of the United States (the "West Coast Port Dispute"). The West Coast ports, which handle about $1 trillion worth of cargo annually, continued to operate for months on end without an official contract.

20.     From late 2014 through early 2015, tensions escalated. The Dockworkers were accused of slowing down their work to cut productivity, thereby pressuring the Shipowners to meet their demands. The backlog of idle cargo ships grew, with dozens of cargo ships anchored near ports for days and weeks at a time.

21.     While port disruptions occur from time to time, the West Coast Port Dispute caused extraordinary harm to United States wholesale and retail supply chains. One consulting firm estimated that the West Coast Port Dispute cost United States retailers $7 billion.

22.     Skechers receives its entire domestic inventory through a single West Coast port: the Port of Long Beach. Therefore, the West Coast Port Dispute was a central concern to both Skechers and its customers.

23.     On July 23, 2014, during the Company's second quarter 2014 Earnings Call, Defendant Weinberg explained that although the Company sometimes sees revenues slated for fourth quarter move into the third quarter as an "extra turn," it was "way too early to commit to any of that." Defendant Weinberg also explained:

> [I]f people move [orders] up from July . . . to June there is usually not enough booked for October to move into September to make up the difference wholly.

Defendant Weinberg revealed two important facts: (1) in July, it is premature for the Company to anticipate early deliveries of pending October shipments; and (2) when Skechers sees revenue

shift from July into June (third quarter into second quarter), the Company does not have enough orders booked for October to move into September (fourth quarter into third quarter) to make up that loss in revenue.

24.    Despite the disruption from the West Coast Port Dispute, Skechers reported steady sales growth in 2014 and issued a positive 2015 forecast. On February 11, 2015, Skechers reported strong financial results for the fourth quarter ended December 31, 2014.

25.    Because the West Coast Port Dispute caused uncertainty as to whether or when shipping times would normalize, Skechers' Domestic Wholesale customers placed fall 2015 merchandise orders well in advance to ensure early shipment. During the fourth quarter 2014 Earnings Call, one analyst raised this issue, asking:

> [C]ould [you] give us a little bit more detail on that . . . backlog number. How much of . . . that increase can be attributed to shifting your fall 2015 order period earlier . . . ?

Defendant Weinberg replied:

> I don't think any of it is attributable to the fact that [Fall 2015 orders are coming in] early. We only book out six months . . . . [S]o we really are only out until the end of June, early July as far as the December 31st backlog is concerned . . . .

Defendant Weinberg's response reveals that, under normal circumstances, Skechers has six months visibility into its Domestic Wholesale customers' scheduled shipments.

26.    However, given the uncertainty over the West Coast Port Dispute, the Company's Domestic Wholesale customers scheduled their "buy meetings" with Skechers earlier than usual, in fourth quarter 2014 rather than first quarter 2015. During the fourth quarter 2014 Earnings Call, Defendant Weinberg stated:

> [W]e shifted our [Fall 2015 buy] meetings with key domestic accounts . . . into the fourth quarter two months earlier to allow us to meet the [incoming] order rate for our new product.

Due to the earlier buy meetings, Skechers had at least eight months visibility into its fall 2015 merchandise shipment schedule.

27.     On February 20, 2015, the Dockworkers and Shipowners finally reached a fiveyear contract deal, averting a total shutdown of the ports. During the following few months, the bottlenecks at the ports began to clear up and large shipments of cargo were delivered to Skechers' Domestic Wholesale customers.

**Materially False and Misleading Statements Issued During the Class Period**

28.     The Class Period begins on April 23, 2015, when Skechers issued a press release announcing financial results for the first quarter ended March 31, 2015. During the related Earnings Call, Defendant Weinberg made positive statements about sales and customer demand, stating in part:

> [D]espite headwinds, including the stronger US dollar [and] the slow down at the West Coast ports, … [Skechers] nevertheless achieved a new quarterly sales record … With significantly increased worldwide bookings, our year-over-year worldwide backlogs are up mid-double digits at March 31, 2015, which we believe is a clear indicator that our momentum will continue throughout the year.

Defendant Weinberg also claimed:

> [O]ur accelerated growth trend will continue through the second quarter and into the back half of 2015. We believe we are well positioned to maintain this growth…

29.     On July 29, 2015, Skechers issued a press release announcing financial results for the second quarter ended June 30, 2015. The release provided positive statements about customer demand and anticipated sales growth, as well as the Company's Domestic Wholesale segment.

Defendant Weinberg touted the Company's results:

> The continued strong demand for our product worldwide led to record quarterly financial results for the second quarter—including net sales, earnings from operations and earnings per share.

CEO Greenberg added:

> Skechers is clearly in the midst of the most exciting time in the Company's 23-year history. The present has never looked as colorful, comfortable and successful thanks to our product and marketing, and resulting record sales, shipments and earnings . . . . Our efforts in product and marketing also resulted in Skechers becoming the No. 2 athletic footwear brand and the No. 1 walking brand in the United States . . . . [D]omestic wholesale remains the largest piece of our business at 42 percent . . . .

Defendant Weinberg also stated:

> **We remain comfortable with the analysts' current consensus estimates for the back half of 2015.**

Third quarter 2015 consensus estimates included: (1) $876 million in revenue; and (2) $0.55 diluted earnings per share.

30.     During the related second quarter 2015 Earnings Call, the Company continued to tout strong growth and customer demand. Defendant Weinberg stated:

> The second quarter benefited from both pent-up demand resulting from US port issues in the first quarter, as well as a shift in back-to-school shipments due to increased demand in both domestic and international markets. This continued strong demand for our product worldwide also led to record net sales, earnings from operations, net earnings, and earnings per share in the second quarter.

Defendant Weinberg also claimed:

> Our year-over-year worldwide backlogs are up mid-double-digits at June 30, 2015 which we believe is a clear indicator that our momentum will continue throughout the year . . . . Based on our domestic wholesale backlog, . . . strong sell-throughs for spring, and early feedback on our fall products, we believe we will continue our sales momentum through the back half of 2015.

31.     During the questions and answers segment of the second quarter 2015 Earnings Call, Defendant Weinberg provided additional details regarding anticipated back-half 2015 performance:

> **We think it's all positive going into third quarter.** And we hear we're performing well for back to school. Most people do think it's starting slower because of the late Labor Day. But we still continue to perform very positively and get great feedback from our customers.

One analyst asked about a revenue shift from July (third quarter) into June (second quarter) and the potential for a subsequent revenue shift from October (fourth quarter) into September (third quarter). Defendant Weinberg replied:

> I believe there's certainly a possibility of that as back to school picks up. We have to see how back to school continues. They took it in early. **I haven't heard of any slowdowns. So certainly, if we continue at this pace, we would anticipate up from Q4 into Q3.**

32.    The statements referenced in ¶¶ 28-31 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's Domestic Wholesale customers took early receipt of fall 2015 inventory, causing them to delay receipt of and, in some cases, cancel pending orders scheduled for delivery in the second half of 2015; (ii) as a result of the foregoing, the Company's Domestic Wholesale growth rate was unsustainable; and (iii) as a result of the foregoing, Skechers' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

33.    On October 22, 2015, Skechers issued a press release announcing financial results for the third quarter ended September 30, 2015, which included disappointing net sales that fell short of analysts' consensus estimates. According to Defendants, $20 million in net sales were shifted from third quarter 2015 into second quarter 2015 due to early customer deliveries. Defendants blamed the sales miss on Skechers' inability to make up this shortfall in third quarter 2015 due to a weaker-than-expected retail environment.

34.     On news of the Company's disappointing net sales and diluted earnings per share, Skechers common stock fell $14.55 per share, or 31.50 percent, to close on October 23, 2015 at $31.64 per share.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Skechers securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Skechers securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Skechers or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Skechers;

- whether the Individual Defendants caused Skechers to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Skechers securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Skechers  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Skechers securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Skechers securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Skechers securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Skechers securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Skechers's finances and business prospects.

49.    By virtue of their positions at Skechers , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Skechers, the Individual Defendants had knowledge of the details of Skechers's internal affairs.

51.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Skechers.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Skechers's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Skechers securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Skechers's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Skechers securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52.    During the Class Period, Skechers securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Skechers securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Skechers securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Skechers securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    During the Class Period, the Individual Defendants participated in the operation and management of Skechers, and conducted and participated, directly and indirectly, in the conduct of Skechers's business affairs.  Because of their senior positions, they knew the adverse non-public information about Skechers's misstatement of income and expenses and false financial statements.

57.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Skechers's financial condition and results of operations, and to correct promptly any public statements issued by Skechers which had become materially false or misleading.

58.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Skechers disseminated in the marketplace during the Class Period concerning Skechers's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Skechers to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Skechers within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Skechers securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of Skechers.  By reason of their senior management positions and/or being directors of Skechers, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Skechers to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Skechers and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Skechers.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 27, 2017

Respectfully submitted,

**POMERANTZ LLP**
*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

Submission Date
2017-10-27 02:18:12

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Skechers U.S.A., Inc. ("Skechers" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Skechers securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Skechers securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Skechers securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

Print Name
Monique Cadle

## Acquisitions

Configurable list (if none enter none)
(see attached)

## Sales

## Documents & Message

Upload your brokerage statements showing your individual purchase and sale orders.



Signature



Full Name

Monique Cadle

**SKECHERS U.S.A., INC. (SKX)**                                    **Cadle, Monique**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 5/1/2015 | Purchase | 104 | $91.6504 |
| 5/8/2015 | Purchase | 94 | $99.1984 |
| 5/19/2015 | Purchase | 105 | $104.1900 |
| 6/16/2015 | Purchase | 74 | $110.9608 |
| 8/21/2015 | Purchase | 392 | $139.6892 |
| 10/16/2015 | Purchase | 225 | $45.2250 |
| 8/10/2015 | Sale | 130 | $154.8450 |
| 8/21/2015 | Sale | 402 | $136.8613 |